IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ESSIENEE JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:20-cv-953-SMD |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| *Acting Commissioner of Social Security*, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION & ORDER

On March 21, 2019, Plaintiff Essienee Jones ("Jones") filed for supplemental security income benefits ("SSI") alleging disability beginning on May 19, 2018. Jones's application was denied at the initial administrative level. She then requested and received a hearing before an Administrative Law Judge ("ALJ"), who found that Jones was not disabled. Jones appealed the ALJ's decision to the Social Security Appeals Council (the "Appeals Council"), which denied review. Consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Jones now appeals that decision under 42 U.S.C. § 405(g). For the reasons that follow, the undersigned AFFIRMS the Commissioner's decision.[1]

---

[1] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. Pl.'s Consent (Doc. 9); Def.'s Consent (Doc. 10).

## I.   STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible to receive Social Security disability benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[2] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004). A claimant's RFC is what the claimant can still do—despite her impairments—based on the relevant evidence within the record. *Id.* The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ

---

[2] *McDaniel* is a SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy the claimant can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines ("Grids")[3] or (2) the testimony of a vocational expert ("VE").[4] *Id.* at 1239-40.

## II.    STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the correct legal standards were applied. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial evidence or the proper legal standards were not applied in the administrative proceedings. *Carnes v. Sullivan*, 936 F. 2d 1215, 1218 (11th Cir. 1991). A court is required to give deference to factual findings, with close scrutiny to questions of law. *Cornelius v. Sullivan*,

---

[3] Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[4] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

936 F. 2d 1143, 1145 (11th Cir. 1991).

"Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F. 2d at 1145.

## III.    ADMINISTRATIVE PROCEEDINGS

Jones was thirty-nine years old on her alleged onset date. Tr. 236. She completed high school and attended college for one year. Tr. 359. Jones has past relevant work experience as a home attendant, nurse attendant, housekeeping cleaner, and daycare worker. Tr. 148-53, 155.

In the administrative proceedings, the ALJ made the following findings with respect to the five-step evaluation process for Jones's disability determination. At step one, the ALJ found that Jones has not engaged in substantial gainful activity since March 21, 2019. Tr. 55. At step two, the ALJ found that Jones suffers from the following severe impairments: "fibromyalgia; rheumatoid arthritis; obesity; [and] major depressive disorder." Tr. 55. At step three, the ALJ found that Jones "does not have an impairment or

combination of impairments that meets or medically equals the severity of one of the listed

impairments[.]" Tr. 55-57.

> The ALJ proceeded to determine Jones's RFC, articulating it as follows:

> [Jones] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except no climbing ladders, ropes, or scaffolds; can perform all other postural activities occasionally; must avoid all exposure to unprotected heights and moving machinery; can understand, remember, and carry out simple, routine tasks; can maintain concentration, persistence, and pace for such tasks in two-hour intervals with customary breaks spread throughout the workday; can interact appropriately with supervisors, and occasionally with the public and coworkers; can adapt to occasional changes in the workplace; would need to have a cane available for ambulation use, at her discretion.

Tr. 57. At step four, the ALJ found that Jones could not perform any past relevant work.

Tr. 62. At step five, the ALJ utilized the testimony of a VE and determined that

"considering [Jones's] age, education, work experience, and residual functional capacity,

there are jobs that exist in significant numbers in the national economy that [Jones] can

perform." Tr. 62-63. Those jobs include "office helper"; "router"; and "marker II." Tr. 62-

63. Accordingly, the ALJ concluded that Jones was not under a disability since the date her

application was filed. Tr. 63.

## IV.  JONES'S ARGUMENTS

Jones argues that the Commissioner's decision should be reversed for two reasons.

First, Jones contends that the ALJ failed to properly evaluate her rheumatoid arthritis

pursuant to Listing 14.09. Pl.'s Br. (Doc. 16) pp. 9-15. Second, Jones argues the ALJ failed

to properly consider the nature of her rheumatoid arthritis and fibromyalgia when

evaluating the RFC and her credibility. *Id.* at 15-22. For the following reasons, the undersigned finds that the Commissioner's decision is due to be affirmed.

## V.    ANALYSIS

### A. The ALJ properly evaluated Jones's rheumatoid arthritis pursuant to Listing 14.09.

Jones argues that the ALJ erred when she found that Jones did not meet or medically equal Listing 14.09 for rheumatoid arthritis. Pl.'s Br. (Doc. 16) p. 10. Listing 14.09 provides four routes for a claimant to meet or medically equal the listing. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1409(A) (effective March 14, 2018). Jones contends that she satisfies the criteria under Sections A and B of Listing 14.09. Section A requires:

> A. Persistent inflammation or persistent deformity of:
>    1. One or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively (as defined in 14.00C6); or
>    2. One or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively (as defined in 14.00C7).

*Id.* Section B requires:

> B. Inflammation or deformity in one or more major peripheral joints with:
>    1. Involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity; and
>    2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

*Id.*

To meet a Listing, the claimant must meet all of the specified medical criteria, and an impairment that fails to do so does not qualify no matter how severely it meets some of the criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The claimant bears the burden of

demonstrating that she meets a Listing, and that burden is heavy because "the [L]istings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.* at 532.

Importantly, an ALJ is not required to "mechanically recite" the evidence or listings considered at step three. *Flemming v. Comm'r of the Soc. Sec. Admin.*, 635 F. App'x 673, 676 (11th Cir. 2015). As the Eleventh Circuit has explained, an ALJ "is required to consider the Listing of Impairments in making a decision at step three," but the failure to discuss a particular Listing "does not necessarily show that the ALJ did not consider [that] [L]isting[.]" *Id.* Even if an ALJ does not make a specific finding as to a particular Listing, the court "may infer from the record that the ALJ implicitly considered and found that a claimant's disability did not meet a listing." *Flemming*, 635 F. App'x at 676; *see also James v. Comm'r of Soc. Sec. Admin.*, 657 F. App'x 835, 838 (11th Cir. 2016) ("A finding that [claimant] lacked adaptive deficits as required under the introductory paragraph of Listing 12.05 can be implied from the ALJ's conclusion that [claimant's] prior work experience indicated that she did not have an intellectual disability."); *Hutchison*, 787 F.2d at 1463 ("There may be an implied finding that a claimant does not meet a listing.").

### 1. The ALJ properly evaluated Jones's rheumatoid arthritis under Listing 14.09A.

In evaluating Jones's rheumatoid arthritis under Section A, the ALJ found that "there is no evidence of persistent inflammation of a weight bearing joint resulting in ineffective ambulation or inability to effectively perform upper extremity fine and gross movements[.]" Tr. 55. Jones argues that this finding is erroneous and not supported by

substantial evidence. Pl.'s Br. (Doc. 16) p. 11. She points to evidence from her primary care physician and her rheumatologist, who opined that Jones met or medically equaled Listing 14.09A. Tr. 1241, 1347. She also cites evidence showing that her joints were observed to be tender, painful, and/or inflamed and swollen, and that her ambulation is affected due to her medical condition. Tr. 157, 355-56, 468, 521-22, 530-31, 603-04, 607, 1185, 1190, 1195, 199-1200.[5]

Ineffective ambulation as considered in Listing 14.09A "means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. pt. 404, Subpt. P, App. 1, § 1.00B2b(1), (2). "Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) *that limits the function of both upper extremities*." *Id.* (emphasis added). Examples include, "the inability to walk without the use of a walker [or] two crutches or *two* canes[.]" *Id.* (emphasis added).

Assuming *arguendo* that Jones presented sufficient evidence to show that she has persistent inflammation or persistent deformity of one or more major peripheral weight-bearing joints as required by Listing 14.09A(1), she has not shown that her rheumatoid arthritis resulted in the inability to ambulate effectively. Jones's evidence shows that she ambulates with one cane—not two. Thus, her assistive device does not limit the functioning

---

[5] This evidence includes testimony that her "walking changed" and that she uses a cane and walks with a limp; that she "walked slowly with a cane"; that she is "extremely slow" and required a "cane to assist with ambulation"; and that she exhibited "obvious pain behaviors."

of both extremities, as required by Section A. *See, e.g.*, *Markham v. Berryhill,* 2018 WL 4409345, at \*7 (N.D. Ala. Sept. 17, 2018) ("However, the use of a single cane to walk does not show that [the claimant] has an 'inability to ambulate effectively as defined in 1.00B2b.'"); *Smith v. Colvin*, 2015 WL 4112361, at \*8 (S.D. Ga. July 7, 2015) (affirming the Commissioner's determination that the claimant did not show ineffective ambulation where "the medical evidence revealed Plaintiff walks with a cane and not a walker, which did not limit both of his upper extremities when he walked"). As such, the undersigned finds that substantial evidence supports the ALJ's determination that Jones did not meet Listing 14.09A.

### 2. The ALJ properly evaluated Jones's rheumatoid arthritis under Listing 14.09B.

In evaluating Section B, the ALJ found that there was "no evidence of inflammation in a major peripheral joint with involvement of two or more organs or body systems with two accompanying constitutional symptoms." Tr. 55. Jones argues that this finding is erroneous and not supported by substantial evidence. Pl.'s Br. (Doc. 16) p. 13. She points to evidence that her primary care physician and rheumatologist opined that she meets Listing 14.09B. Tr. 1241, 1347. She also cites evidence purportedly showing that she has at least two of the constitutional signs or symptoms, namely severe fatigue and malaise, required by Section B. Tr. 1241. This evidence includes:

- A treatment record from East Alabama Arthritis Center ("EAAC") wherein Jones reported that she had experienced fatigue for approximately 5-6 years. Tr. 546.

- Two EAAC treatment records wherein Jones reported fatigue. Tr. 530, 534.

- A treatment record from EAAC wherein Jones complained of fatigue and described her pain as a generalized ache that is more severe in the morning. Tr. 526-27.

- A record from the East Alabama Mental Health Center noting that Jones's physical pain left her exhausted and tired. Tr. 606.

- A visit to Auburn Cardiovascular wherein Jones complained of fatigue. Tr. 578.

- An ER visit for back pain. Tr. 858.

- An ER visit for chest pain where she reported that she experienced mild to moderate fatigue. Tr. 802.

Assuming *arguendo* that Jones meets the other parts of Section B, she has not shown that she has at least two of the constitutional signs—here, severe fatigue and malaise—as required to meet the Listing. Severe fatigue is described as "a frequent sense of exhaustion that results in significantly reduced physical activity or mental function." 20 C.F.R. pt. 404, Subpt. P, App. 1 § 14.00C2. "Malaise means frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function." *Id.* The evidence Jones cites arguably shows that she consistently experienced fatigue. The evidence does not show, however, that the fatigue was severe enough to significantly reduce her physical activity or mental function. Similarly, to the extent that Jones's evidence shows malaise, it does not show that her malaise was frequent or that it resulted in significantly reduced physical activity or mental function. As such, the undersigned finds that substantial evidence supports the ALJ's determination that Jones did not meet Listing 14.09B.

**B. The ALJ properly considered Jones's rheumatoid arthritis and fibromyalgia when evaluating the RFC and Jones's credibility.**

> **1. The ALJ properly considered Jones's rheumatoid arthritis when evaluating her RFC.**

Jones argues that the ALJ failed to properly consider the nature of her rheumatoid arthritis when evaluating her RFC. Pl.'s Br. (Doc. 16) p. 15. Specifically, Jones contends that the ALJ cherry-picked records reflecting her good days and used those records to discredit evidence of her rheumatoid arthritis flare-ups. *Id.* at 16-17. Jones asserts that her flare-ups warrant an absenteeism consideration in her RFC. *Id.*

Jones points to the following evidence to show that her rheumatoid arthritis flare-ups would cause her to be absent from work. First, Jones cites evidence that she needs "help getting up at times, even to go to the bathroom" during her flare-ups. *Id.* at 17 (citing Tr. 157). Second, she notes that she uses a cane or walker during a flare-up, which "shows how her gait changes during a flare." *Id.* (citing Tr. 376). She also points to evidence that she occasionally uses a cane and, as described by her therapist, has an "extremely slow gait and obvious pain behaviors."[6] *Id.* (citing Tr. 607, 612, 715, 811). Third, Jones cites a day wherein her goal was simply to get out of bed at least twice a day. *Id.* (citing Tr. 715). Finally, Jones notes evidence from a consultative examiner, who indicated that if she has a flare-up "she gets help with bathing and dressing from her mom or any other family members." *Id.* (citing Tr. 1178).

---

[6] It is not clear whether this evidence is during a flare-up of Jones's rheumatoid arthritis or a part of her condition generally.

In determining Jones's RFC, the ALJ relied on the testimony of a VE. During the administrative hearing, the ALJ asked the VE whether there was work available for an individual with Jones's RFC who would also be absent more than four days per month. Tr. 166. The VE indicated that no work would be available for someone who would be absent that frequently. Tr. 166. But Jones's evidence does not show that she would be absent more than four times per month due to her conditions. At best, it suggests that during a flare-up of her rheumatoid arthritis, Jones would require the use of a cane and might need assistance getting up. Simply put, this evidence does not undermine the ALJ's RFC determination, which does not include an absenteeism limitation.[7] Therefore, Jones has not shown that the ALJ erred.

### 2. The ALJ properly evaluated Jones's credibility.

Jones argues that the ALJ failed to properly evaluate whether she met the pain standard. To establish disability based on pain testimony, a claimant must show: "(1) evidence of an underlying medical condition; and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858,

---

[7] Of course, to the extent a flare-up would cause Jones to need assistance in getting up, this limitation could arguably lead to a work absence. However, Jones does not point to any evidence showing that she would be absent from work any particular number of days each month due to a flare-up. Instead, she simply argues that "[a] reasonable person would expect [her] to be absent from work at times due to her rheumatoid arthritis flares," and that the ALJ's "implied finding that [she] would never miss work . . . is not based on substantial evidence." Pl.'s Br. (Doc. 16) p. 17. Jones's speculation does not undermine the ALJ's decision to not include an absenteeism limitation.

867 (11th Cir. 2019). Under the regulations, however, "an individual's statements of symptoms alone are not enough to establish the existence of a physical . . . impairment or disability." SSR 16-3p. If the ALJ finds that a claimant's allegations of disabling symptoms are inconsistent with the evidence, the ALJ must clearly articulate explicit and adequate reasons for discounting the testimony. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). In discounting a claimant's pain testimony, the ALJ must consider the entire record, including the objective medical evidence, statements of the claimant and her doctors, and her daily activities. *See Costigan v. Comm'r, Soc. Sec. Admin.*, 603 F. App'x 783, 786 (11th Cir. 2015) (noting that the ALJ must consider "all of the record, including the objective medical evidence . . . and statements of the claimant and her doctors" in determining if the claimant meets the pain standard); *Sarli v. Berryhill*, 817 F. App'x 916, 918 (11th Cir. 2020) (listing criteria for the ALJ to evaluate a claimant's pain testimony to include the claimant's daily activities). An ALJ's decision to discount a claimant's pain testimony will be affirmed so long as the decision is not a "broad rejection [of the testimony] which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211 (quotation and brackets omitted).

During the administrative hearing, Jones testified that she has constant pain and fatigue from her rheumatoid arthritis and fibromyalgia. Tr. 157. She stated that her hands and feet swell often. Tr. 158. She claimed that it is painful for her to lift a gallon of milk. Tr. 159, 161. Further, she averred that she uses a cane for ambulation and that she

constantly lays down during the day. Tr. 157, 161. During bad flare-ups, Jones stated that she stays in bed all day and has difficulty getting in the shower and getting dressed. Tr. 157, 159, 161. She testified that she has trouble preparing meals on her own; does not do household chores; only drives when she must; cannot lift more than 5-8 pounds; cannot sit for more than five minutes without pain; and cannot walk for more than two minutes without pain. Tr. 159-160. Jones also claimed that her body hurts whenever she attempts activity and that her pain causes her to be depressed. Tr. 156.

Jones argues that the ALJ erred by failing to find her pain disabling under both (2) and (3) of the pain standard. As for part (2), Jones argues that there is objective medical evidence confirming the severity of her pain. Pl.'s Br. (Doc. 16) p. 19. She points to therapy notes from the East Alabama Mental Health Center ("EAMHC") wherein her mental health therapist described Jones as a "39yo woman on a walker, with extremely slow gait and obvious pain behaviors." Tr. 607. The therapist noted that she could hear Jones's "exaltations and verbal pain behaviors down the hall" and that Jones was "unable to sit down for more than 30 seconds secondary to [her] pain level." Tr. 607. Jones also points to another EAMHC treatment note that indicates her "pain is still high and prevents her from doing things like fixing her hair or sitting too long, laying down." Tr. 724. Finally, Jones points to an EAMHC treatment record where her therapist noted that she assisted Jones "with processing feelings of hopelessness related to her chronic pain." Tr. 737.

While Jones has pointed to several occasions wherein a treatment provider notated that Jones was in pain (or claimed to be in pain), this is not objective evidence confirming

the severity of her alleged pain. Notably, the EAMHC treatment record immediately following the record wherein Jones's therapist could hear her "exaltations and verbal pain behaviors down the hall" indicates that Jones "is showing much fewer pain behaviors today than last time" and that she was "pleasant, calm, and polite." Tr. 608. And as for the EAMHC record wherein Jones's pain purportedly prevented her from fixing her hair, the therapist also noted during the same visit that Jones reported that she "has been busy with birthday parties and weddings." Tr. 724. Certainly, Jones has shown that she experienced painful days; however, self-reports or isolated observations of Jones's varying degrees of pain do not objectively confirm the severity of her alleged daily pain and debilitating symptoms. Thus, the undersigned finds that the ALJ did not err by finding that Jones did not meet the pain standard under part (2).

As for part (3), Jones argues that her fibromyalgia and rheumatoid arthritis can reasonably be expected to give rise to her claimed pain, and that the ALJ's rationale for discounting her pain and symptom testimony is flawed. Pl.'s Br. (Doc. 16) pp. 19-22. In discounting Jones's statements, the ALJ considered the objective medical evidence, Jones's daily activities, and the prior administrative findings of Dr. Victoria Hogan, a consultative physician. Tr. 58-60.

Turning to the objective medical evidence, the ALJ noted that Jones's records "reflect complaints of generalized joint and muscle pain . . . consistent with . . . fibromyalgia and rheumatoid arthritis diagnosis." Tr. 58. The ALJ discussed records showing that Jones's hands, ankles, and knees appear tender and swollen at times but, at

other times, her joints were unremarkable and pain free. Tr. 58. Additionally, the ALJ discussed Jones's use of a cane. The ALJ noted that there was no indication that Jones was ever prescribed an assistive device and that she sometimes had a normal gait without the aid of an assistive device.[8] Tr. 58. Further, the ALJ pointed to a March 2019 record wherein Jones reported approximately five minutes of morning stiffness and no malaise or fatigue. Tr. 58. Finally, the ALJ considered Jones's ER visits, wherein she reported extreme pain, although her physical examinations and imaging studies were unremarkable. Tr. 58.

The ALJ also considered Jones's daily activities to discount her pain testimony. The ALJ noted that Jones raised her three children largely on her own, Tr. 59, 370, 1178-79, 1268; could drive, shop for groceries, and manage household finances without issue, Tr. 59, 722, 724, 1178; and could attend church, birthday parties, and weddings, Tr. 59, 722, 724, 1178.

Finally, the ALJ discounted Jones's pain testimony based on Dr. Hogan's opinion that Jones could perform light exertional work with some limitations. Tr. 60. In particular, the ALJ noted that Dr. Hogan's exertional and hazard limitations were consistent with Jones's sometimes tender and swollen joints that were unremarkable at other times. Tr. 60, 1185, 1194-95, 1199, 1299. Moreover, the ALJ found that the mild findings from Jones's MRI of her lumbar spine and her body mass index (mid-30s) supported Dr. Hogan's limitations. Tr. 60, 1184, 1207, 1245.

---

[8] Nonetheless, the ALJ accounted for cane usage in Jones's RFC.

The undersigned finds that the ALJ considered all evidence about the intensity, persistence, and functionally limiting effects of Jones's pain. Contrary to Jones's argument that the ALJ merely cherry-picked evidence to discount her symptoms, the ALJ credited Jones's testimony that she experienced pain, had swelling in her appendages, and used a cane to ambulate. Tr. 58 ("Outpatient treatment notes reflect complaints of generalized joint and muscle pain . . . consistent with the claimant's fibromyalgia and rheumatoid arthritis diagnoses."); ("She does use a cane at times."); ("Her hands, ankles, and knees appear tender and swollen at times[.]"). Nonetheless, the ALJ discounted Jones's claims of debilitating pain and articulated explicit and adequate reasons for doing so—i.e., how the objective medical evidence, Jones's daily activities, and Dr. Hogan's findings contradicted her testimony. Because the ALJ considered Jones's medical condition as a whole and provided sufficient rationale for discounting Jones's testimony, the undersigned finds that the ALJ did not err in discounting Jones's pain testimony.[9]

---

[9] To be sure, Jones contends that the ALJ's rationale for discounting her pain testimony is flawed. Pl.'s Br. (Doc. 16) pp. 19-21. In support, she asserts, *inter alia*, that the ALJ (1) used improper evidence—i.e., an MRI of her lumbar spine—to discredit her fibromyalgia symptoms; (2) failed to recognize the cyclical and flaring nature of her rheumatoid arthritis; and (3) improperly considered the psychogenic component of her pain. *Id.* at 20-21. The undersigned disagrees. As discussed above, substantial evidence supports the ALJ's discount of Jones's testimony, and Jones's arguments do not undercut that finding. Considering the evidence that detracts from the evidence relied on by the ALJ, the undersigned finds that there remains enough relevant evidence on which the ALJ relied that a reasonable person would find adequate to discount Jones's pain testimony. The Court will not reweigh the evidence, decide the facts anew, or substitute its judgment for that of the Commissioner.

## V.    CONCLUSION

For the reasons explained above, the undersigned orders that the Commissioner's

decision is AFFIRMED.

A separate judgment will issue.

DONE this 9th day of September, 2022.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE